# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00341-CR

---

**Kelly James McCarty, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 33RD DISTRICT COURT OF BURNET COUNTY
NO. 30842, THE HONORABLE BURT CARNES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Kelly James McCarty was indicted on three counts of indecency with a child by contact. *See* Tex. Penal Code § 21.11. Following a jury trial, McCarty was convicted of the first and third counts and acquitted of the second count. In March 2009, the trial court sentenced McCarty to five years' imprisonment for the first count and ten years' imprisonment for the third count; however, the court suspended imposition of McCarty's ten-year sentence and placed him on community supervision, i.e., probation. In two separate out-of-time appeals, this Court affirmed McCarty's convictions on both counts. [1]  *McCarty v. State*, No. 03-15-00640-CR,

---

[1] Because the underlying facts and the post-conviction procedural history of the case are well known to the parties and are set forth in this Court's opinions affirming McCarty's convictions, we will not recite them here. *See, e.g.*, *McCarty v. State*, No. 03-15-00640-CR, 2017 Tex. App. LEXIS 9453, at *20 (Tex. App.—Austin Oct. 6, 2017, pet. ref'd) (mem. op., not designated for publication) (summarizing underlying facts and procedural history; citing *Ex parte McCarty*, No. AP-76,607, 2011 Tex. Crim. App. Unpub. LEXIS 610, at *2 (Tex. Crim. App. Aug. 24, 2011) (per curiam) (op., not designated for publication); *McCarty v. State*, No. 03-

2017 Tex. App. LEXIS 9453, at *20 (Tex. App.—Austin Oct. 6, 2017, pet. ref'd) (mem. op., not designated for publication) (affirming conviction on third count); *McCarty v. State*, No. 03-11-00628-CR, 2014 Tex. App. LEXIS 4046, at *20-21 (Tex. App.—Austin Apr. 15, 2014, no pet.) (mem. op., not designated for publication) (affirming conviction on first count).

In July 2019, McCarty had completed his five-year sentence and was serving his ten-year probated sentence when the State filed a motion to revoke his community supervision, which it later amended three times. In its second amended petition, the State alleged that McCarty had violated the terms and conditions of his probation by committing an "offense against the laws of this State," specifically, by attempting "to employ or authorize or induce" a child younger than eighteen years of age to engage in sexual conduct.[2] *See* Tex. Penal Code § 43.25(b). In its third amended motion to revoke, filed on March 25, 2022, the State alleged that McCarty had also violated the terms and conditions of his probation by committing the offense of causing injury to an elderly individual. *See id*. § 22.04(a). A hearing on the State's third amended motion to revoke was conducted on May 9, 2022. At the conclusion of the hearing, the trial court found that the allegations in the State's motion to revoke were "true," granted the State's motion, and signed a judgment sentencing McCarty to ten years' imprisonment.

---

09-00378-CR, 2009 Tex. App. LEXIS 5722, at *1 (Tex. App.—Austin July 22, 2009, no pet.) (mem. op., not designated for publication)).

[2] In its original motion to revoke, first amended motion to revoke, and second amended motion to revoke, the State alleged that McCarty had violated the conditions of his probation by failing to successfully complete a treatment and counseling program and by operating an unmonitored computer. The State abandoned both of these grounds in its third amended motion to revoke.

McCarty appeals the trial court's judgment revoking his community supervision, asserting that the trial court lacked jurisdiction to revoke his probation, the evidence is insufficient to support the trial court's finding that he violated the terms and conditions of his probation, and his right to a speedy trial was violated. We will affirm the judgment revoking community supervision.

## DISCUSSION

### *Jurisdiction of the Trial Court over the Revocation Proceedings*

As a preliminary matter, we first must consider McCarty's argument that the trial court was without jurisdiction when it revoked McCarty's probation. In McCarty's view, his sentences were to be served concurrently, and as a result, his ten-year probation had already expired when the trial court signed the order revoking his community supervision. In support of this argument, McCarty points out that two written judgments—one for each count—were signed on March 9, 2007. On the written judgment for the first count, the word "consecutively" is printed but scratched out; the word "concurrently" is handwritten and initialed by the trial court judge, but not dated. On the written judgment for the third count, for which McCarty received ten years' probation, the phrase "this sentence shall run consecutively (see below)" is printed, and at the bottom of the judgment, the phrase "For clarification-this count runs consecutively to count one" is handwritten, initialed by the trial court judge, and dated June 24, 2007. McCarty reasons that because the handwritten notation on the judgment for count three was added 109 days after the original written judgment was signed and after the trial court's plenary jurisdiction had expired, the resulting cumulation order is void as a matter of law.

In his direct appeal from the conviction from the third count, McCarty challenged the trial court's decision to order that his sentences run consecutively—that is, that his ten-year probation period would begin to run after completion of his five-year incarceration period. *McCarty*, 2017 Tex. App. LEXIS 9453, at *10-11. McCarty argued that the trial court's cumulation order was void because the trial court did not make an oral pronouncement during formal sentencing that his sentences would run consecutively. *Id*. Concluding that the record showed that McCarty received adequate notice that his sentences would be served consecutively, we rejected McCarty's challenge to the cumulation order. *Id*. at *14.

Later, in connection with the motion to revoke, McCarty filed an application for writ of habeas corpus, in which he argued that his appellate counsel had rendered ineffective assistance when challenging the cumulation order and that the trial court should treat his sentences as running concurrently and, consequently, discharged. *See Ex parte McCarty*, Nos. 03-21-00614-CR, 03-22-00381-CR, 2023 Tex. App. LEXIS 7830, at *3 (Tex. App.—Austin Oct. 13, 2023, pet. ref'd) (mem. op., not designated for publication). In part, McCarty asserted that his appellate counsel had failed to raise the same void-order argument that he now presents in this appeal. *Id*. at *8. After the trial court denied McCarty's application for writ of habeas corpus, McCarty appealed to this Court. *Id*. at *7-8. Upon review, this Court concluded that (1) the original written judgment on McCarty's probated sentence was consistent with the trial court's oral pronouncement that McCarty's sentences would run consecutively, and (2) the notated judgment, clarifying which of McCarty's sentences would be served first, constituted a valid judgment nunc pro tunc and was not a void judgment. *Id.* at *11 (citing *Mitchell v. State*, Nos. 09-18-00333−00335-CR, 2019 Tex. App. LEXIS 10957, at *6 (Tex. App.—Beaumont Dec. 18, 2019, no pet.) (mem. op., not designated for publication) (concluding that correction to

cumulation order to specify which sentence would run first was proper judgment nunc pro tunc and not void)).

For the reasons discussed in greater detail in our prior opinion, we again reject McCarty's request to declare that the trial court lacked plenary jurisdiction "when it increased the punishment on June 24, 2009, and any attempt to cause Count I and Count III to run consecutively is void."[3] Because McCarty's sentences ran consecutively, he was still serving his probated sentence when the trial court revoked his probation. We overrule McCarty's first issue on appeal.

### The Trial Court's Ruling on the State's Motion to Revoke

Next, we consider McCarty's argument that the trial court abused its discretion in revoking his community supervision because the evidence is insufficient to support the trial court's finding that he had violated the terms and conditions of his community supervision by committing an offense under the Texas Penal Code.

#### Legal Background and Standard of Review

In a hearing to revoke community supervision, the State has the burden of proving a violation of the terms of community supervision by a preponderance of the evidence. *Hacker*

---

[3] Although not entirely clear, McCarty also suggests that the trial court's original written cumulation order is void because "[a]ll discussions regarding a cumulation order occurred after the victim-allocution statements took place at the behest of the State." *See* Tex. Code Crim. Proc. art. 42.03 § 1(b). While the failure to comply with Article 42.03 may be asserted as grounds for reversal of a sentence on direct appeal, assuming the error is properly preserved, *see* Tex. R. App. P. 33.1, we cannot conclude that such a failure would result in a void sentence, such that a defendant could collaterally attack the sentence on this ground years later in a direct appeal from his probation revocation, *Ex parte Shields*, 550 S.W.2d 670, 675-76 (Tex. Crim. App. 1977) (defects in conduct of proceedings that render proceedings void may be collaterally attacked by invoking habeas corpus).

*v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). That burden is met when the greater weight of the credible evidence before the court creates a reasonable belief that the defendant has violated a condition of his community supervision. *Id.* at 864-65.

We review a trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In conducting this analysis, we must view the evidence in the light most favorable to the trial court's order. *Jones v. State*, 589 S.W.2d 419, 420 (Tex. Crim. App. 1979); *Guerrero v. State*, 554 S.W.3d 268, 273 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In addition, we are mindful that the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 865. When sufficient evidence supports a finding that the defendant violated a condition of his community supervision, the trial court does not abuse its discretion by revoking community supervision. *Wade v. State*, 83 S.W.3d 835, 839-40 (Tex. App.—Texarkana 2002, no pet.).

*Analysis*

The State presented three witnesses in support of its allegation that McCarty violated the terms and conditions of his probation by committing the offense of causing bodily injury to an elderly individual: the alleged victim, McCarty's seventy-two-year-old father, Danny McCarty; Estaban Alvayero, a San Antonio restaurant manager, who witnessed at least part of the alleged assault; and Juan Pena, a patrolman for the San Antonio Police Department, who responded to the 9-1-1 call.[4] In his testimony, Alvayero stated that around 1:30 a.m. on March 22, 2022, he and some of his employees were cleaning up the pizza shop after closing

---

[4] Because McCarty and his father share the same last name, for clarity we will refer to McCarty's father by his first name.

6

when he was alerted by his business partner, Anthony Rodriguez, of a commotion coming from the parking lot behind the shop. Alvayero went to investigate, and upon opening the back door, he heard someone scream, multiple times, "Somebody please help me." Alvayero testified that he recognized the voice as Danny, a regular patron who lived nearby.

Alvayero and Rodriguez decided to help, and as the screaming continued, Alvayero determined that it was coming from a house where he knew Danny lived. Alvayero testified that as he approached the front porch to the house, he saw Danny lying face down on the top of the porch, covered in blood, and "a man on top of him with his knee on his back and his hands on his neck." Alvayero testified that he recognized the man, McCarty, as Danny's son, whom Danny had brought to the pizza shop several times. Alvayero observed that McCarty was applying pressure to Danny's back and that Danny appeared to be in pain and distress. Alvayero told McCarty to get off Danny several times, and after approximately 30 seconds, McCarty complied. Alvayero testified that he then helped Danny find his glasses and clean the blood from his face and that he kept McCarty away from Danny as they waited for police to arrive. Alvayero identified McCarty in court as Danny's son and the man he saw on top of Danny that evening.

In his testimony, Danny told the court that McCarty is the oldest of his three children and that prior to March 2022, he and McCarty would get together "on a fairly regular basis." On March 22, 2022, Danny, McCarty, and McCarty's roommate, Simon Moreno, went out for dinner and then to a bar. According to Danny's testimony, both he and McCarty had drinks, and after approximately an hour, they went to Danny's house to sit on the front porch and to talk. Danny testified that they were having a "good evening" until they began to discuss where Danny would live after he moved out of his current home. Danny stated that he told

7

McCarty that he was not planning to live with him and that upon hearing this news, McCarty became very upset. Danny testified that McCarty then lunged at him, pinned him down, and struck him repeatedly. Danny then yelled for help, and Alvayero and Rodriguez eventually arrived and called the police. Upon arrival, the police questioned Danny about what had occurred and took photos of his injuries, which were admitted into evidence at the hearing. Consistent with these photos, Office Pena testified that when he arrived at the scene, he observed that Danny had bruising and abrasions on his face and was complaining of his shoulder hurting and that there was blood on the porch.

On appeal, McCarty argues that the evidence is insufficient to support the trial court's finding that he committed the offense of injury to an elderly individual because Danny's testimony that McCarty physically assaulted him is unreliable. McCarty points out that on cross-examination, Danny admitted that he was intoxicated at the time of the incident and that when police arrived, he told them, "I am not reliable, I'm drunk." Further, McCarty argues, Danny acknowledged on cross-examination that in June 2021, he sought medical treatment after he fell and hurt himself while intoxicated and that in 2020 and 2021, he was on community supervision for a conviction for driving while intoxicated.

McCarty also argues that the evidence is insufficient to support the trial court's finding because there was "conflicting evidence between [Danny] in that allegation and an eyewitness." In support of this argument, McCarty relies on testimony provided by Moreno, McCarty's roommate, who was present when the altercation occurred. Moreno testified that after leaving the bar, McCarty and his father were talking on Danny's porch, when the topic turned to that of McCarty's sister's health, which was a "point of contention" between them. According to Moreno's testimony, Danny tried to hit McCarty, and McCarty attempted to

restrain his father in "a tight bear hug of sorts" to stop him from swinging. Danny then "jerked very strongly to one side causing both of them to fall together, still in the bear hug, and Danny fell on his left side." Moreno testified that he witnessed the entire event and that McCarty never struck his father, but Moreno also admitted that when the police arrived, he told the police that he had not seen anything. Moreno explained that he has autism and that he was "overwhelmed by what just happened" and "didn't feel like talking to the police."

We disagree that the testimony relied on by McCarty, the strength of which turns on trial court's evaluation of the witnesses' credibility, establishes that the trial court abused its discretion in finding that McCarty committed the offense of injury to an elderly individual. Instead, viewing the evidence in the light most favorable to the trial court's decision, we conclude that the evidence is sufficient to support the trial court's finding that McCarty committed the offense. Because the undisputed evidence establishes that the terms and conditions of McCarty's community supervision prohibited him from committing any offense, the trial court did not abuse its discretion in revoking McCarty's community supervision. Because proof of a violation of a single condition of community supervision is sufficient to support a trial court's decision to revoke, we need not consider McCarty's arguments as to the other remaining ground upon which the trial court based its decision to revoke his probation.[5]

---

[5] The State also alleged that McCarty had committed an offense by attempting to induce a child to engage in sexual conduct, in violation of Section 43.25 of the Penal Code. The allegation was based on a report of an incident that occurred in 2019 in Edwards County, involving a seventeen-year-old high school student. According to the teenager's testimony at the revocation hearing, he and McCarty were alone when McCarty asked him to pull out his (the teenager's) penis and "play with it." On appeal, McCarty argues that the evidence is insufficient to support the trial court's finding that he violated Section 43.25 because there was no evidence of actual inducement and because the statute cannot be construed so broadly as to criminalize mere speech. *See* Tex. Penal Code § 43.25(b) ("A person commits an offense if . . . he . . . induces a child younger than 18 years of age to engage in sexual conduct or a sexual

*See Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Guerrero*, 554 S.W.3d at 274. We overrule McCarty's third issue on appeal.

### The Trial Court's Denial of McCarty's Motion to Dismiss

Finally, we consider McCarty's argument that the trial court should have granted his pre-revocation hearing motion to dismiss, in which he challenged the revocation proceedings on the ground that his constitutional right to a speedy trial had been violated.

#### Legal Background and Standard of Review

The right to a speedy trial, guaranteed by the Constitutions of the United States and Texas, is applicable to revocation proceedings. *Carney v. State*, 573 S.W.2d 24, 26 (Tex. Crim. App. 1978); *Wisser v. State*, 350 S.W.3d 161, 165 (Tex. App.—San Antonio 2011, no pet.) (applying speedy-trial analysis to revocation hearing). To determine whether a defendant was denied a speedy trial, courts weigh and balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). This balancing test requires that the court weigh, on a case-by-case basis, "the conduct of both the prosecution and the defendant," and no single factor is a "necessary or sufficient condition to the finding" of a speedy-trial violation. *Id*. The State has the burden of justifying the length of the delay, and the accused has the burden of proving that he asserted the right and that he suffered prejudice as a result of the delay. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

---

performance."); *see also Ex parte Fujisaka*, 472 S.W.3d 792, 801 (Tex. App.—Dallas 2015, pet. ref'd) (rejecting facial overbreadth challenge but noting that "application of 43.25(b) to the authorization or inducement of seventeen-year-old children to engage in sexual conduct or a sexual performance is the most problematic application of the statute"). Because we will confirm the revocation on other grounds, we need not decide these issues.

10

When reviewing a trial court's ruling on a motion to dismiss based on a speedy-trial claim, we must do so in light of the arguments, information, and evidence that was available to the trial court when it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). "We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components." *State v. Lopez*, 631 S.W.3d 107, 113-14 (Tex. Crim. App. 2021). Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is purely a legal question. *Cantu*, 253 S.W.3d at 282. In assessing the evidence, we are mindful that a trial court may "completely disregard" even uncontroverted testimony if there is a "reasonable and articulable basis for doing so." *Id*. Therefore, we review all evidence in the light most favorable to the trial court's ultimate ruling. *Id.*

*Length of the Delay*

Before a court engages in analysis of each *Barker* factor, the accused must first make a threshold showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial delay.'" *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *see Lopez*, 631 S.W.3d at 114 (explaining that length of delay is "a 'triggering mechanism' for analysis of the other *Barker* factors"). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other [*Barker*] factors that go into the balance." *Barker*, 407 U.S. at 514. The length of delay is measured from the date the defendant is arrested or formally accused, whichever occurs first, to the date of trial. *Shaw*, 117 S.W.3d at 889. Although "[t]here is no set time element that triggers the analysis," generally, a delay of eight months to a year, or longer, is considered presumptively prejudicial.

11

*Lopez*, 631 S.W.3d at 114 (quoting *Cantu*, 253 S.W.3d at 281); *see also Doggett*, 505 U.S. at 652 n.1 (explaining that one-year delay is generally sufficient to trigger *Barker* analysis).

Here, the State filed its first motion to revoke on July 9, 2019, and after McCarty turned himself in on the motion to revoke, he was released on personal bond. On November 30, 2021, the State filed its second amended motion to allege, for the first time, that McCarty had violated the terms and conditions of his probation by committing an illegal offense, namely, the offense of inducing the sexual conduct of a child. On March 25, 2022, the State filed its third amended motion to revoke, alleging that McCarty had also violated the conditions of his probation by committing the offense of causing bodily injury to an elderly individual; the State filed the amendment three days after the altercation occurred. On May 6, 2022, McCarty filed his motion to dismiss the State's third amended motion to revoke, asserting that his right to a speedy trial had been violated.[6] A hearing on McCarty's motion to dismiss was held on May 9, 2022, and upon denying the motion, the trial court conducted the hearing on the State's third amended motion to revoke.

The time between when the State amended its motion to revoke to allege, for the first time, that McCarty had violated the terms and conditions of his probation by committing an offense and when the trial court conducted the revocation hearing on that allegation was approximately five months. We would not conclude that this time, standing alone, is sufficient to trigger a *Barker* analysis. Nevertheless, we will assume without deciding that the delay is properly calculated from the date the State filed its first motion to revoke to the date of the revocation hearing and that this delay of more than two years is presumptively unreasonable.

---

[6] In its third amended motion to revoke, the State abandoned alternative grounds from its first and second amended motion and proceeded solely on the ground that McCarty had violated the conditions of his probation by committing two offenses under the Texas Penal Code.

*Reason for the Delay*

Having assumed that the State's delay in obtaining a hearing on its motion to revoke was sufficient to trigger a *Barker* analysis, we evaluate the State's reason for the delay. The State has the burden of justifying an unreasonable delay. *Turner v. State*, 545 S.W.2d 133, 137 (Tex. Crim. App. 1976). "While valid reasons for delay do not weight heavily against the State, bad-faith delays do." *See Lopez*, 631 S.W.3d at 107.

The State asserts that the delay was the result of various motions by McCarty, including a motion to modify the terms and conditions of probation, filed on November 26, 2019, which was granted; a motion to dismiss and discharge defendant from probation, filed September 16, 2020, asserting that the cumulation order was void; a motion to disqualify the district attorney, filed July 28, 2021; a motion for continuance, filed November 3, 2021; and a joint motion for continuance, filed January 5, 2022. In addition, the State points out that for a large portion of time after the State filed its first motion to revoke, beginning in March 2020, the court and the parties were operating under COVID restrictions.

In contrast, McCarty argues that the reasons for the delay are a result of actions by the State and that these actions establish that the State was acting in bad faith. Specifically, McCarty asserts that (1) the State opposed efforts by McCarty to secure enrollment in a treatment program, which resulted in the original motion to revoke in July 2019; (2) the State sought to revoke McCarty's probation on the ground that he had failed a polygraph test, which the State knew or should have known is a legally insufficient ground; (3) the district attorney withdrew and the Attorney General's Office was appointed to represent the State's interest in the proceeding because, according to McCarty, his probation officer had erroneously forwarded attorney-client privileged information to the district attorney's office; and (4) the State filed a

13

second amended petition in 2022 to add an allegation that McCarty had attempted to induce a child to engage in sexual conduct, although the incident was first reported in 2019.

At the hearing on the motion to dismiss, neither McCarty nor the State called any witnesses to support their respective theories as to the reasons or motivation for the State's delay. Based on the record, consisting primarily of the procedural history of the case as reflected in the clerk's record, we cannot conclude that the evidence establishes that the State was acting in bad faith, as McCarty contends. Instead, the record shows that the delays were the result of neutral actions taken by both McCarty and the State. Because the State has not met its burden of justifying a presumptively prejudicial delay, we conclude that this factor weighs in favor of a speedy-trial violation, although only slightly. *See id.* (explaining that neutral reasons for delay, like negligence, weigh less heavily than bad-faith delays).

*Assertion of the Right*

Although the nature of the speedy-trial right makes "it impossible to pinpoint a precise time in the process when the right must be asserted or waived," the defendant "does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 283 (quoting *Barker*, 407 U.S. at 531). Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id.* "Filing for a dismissal instead of speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of speedy one." *Id.* If a defendant fails to first seek a speedy trial before dismissal of the charges, he should provide cogent reasons for this failure." *Id.*

Here, McCarty first invoked his right to a speedy trial after the State filed its third amended motion to revoke by filing a motion to dismiss. McCarty did not request a speedy trial before requesting that the trial court dismiss the State's motion. Finally, McCarty did not testify nor present any argument to explain the reason for his failure to seek a speedy trial before seeking a dismissal. This factor weighs in favor of the State.

*Prejudice*

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant." *Id.* at 285. We analyze prejudice to the defendant in light of the following interests: (1) to prevent oppressive pre-trial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *Id.* Of these interests, the most serious is the last, including the unavailability of witnesses or loss of witnesses, "because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Here, it is undisputed that McCarty was not incarcerated while he was awaiting a hearing on the State's motion to revoke. In addition, although McCarty's counsel argued that the delay had caused McCarty to suffer anxiety and that the time spent in defending the allegations has negatively impacted his business and resulted in financial losses, McCarty did not testify or present other evidence as to why this anxiety was a result of the delay in his revocation proceedings as opposed to the allegations in the State's motion to revoke. Most importantly, no evidence was presented as to how the delay negatively impacted his ability to defend against the State's allegations. While McCarty argued in his written motion that evidence related to the

15

allegation that he had attempted to induce a minor to engage in sexual conduct has been lost or destroyed, he presented no explanation or argument as to how his ability to defend against the allegation that he had committed the offense of injury to an elderly individual was impeded. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the anxiety suffered by McCarty is no greater than that "normally associated with a criminal charge or investigation," *see Cantu*, 253 S.W.3d at 286, and that McCarty's defense was not impaired by the delay such that he was prejudiced.

In applying the *Barker* balancing test, we must "use common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* at 281. "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.* Upon considering the record before the trial court, applying the relevant standard of review, and utilizing a common-sense approach in balancing the *Barker* factors, we hold that the trial court did not err in denying McCarty's motion to dismiss. We overrule McCarty's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgment revoking community supervision.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed:   February 15, 2024

Do Not Publish